# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE No.:

TAVIA WAGNER,

     Plaintiff,

vs.

VIRGINIA-SACRAMENTO
INVESTMENTS, LLC, and
LA ABUNDANCIA BAKERY
COLOMBIANA, INC., et al.,

     Defendants.

_____/

## **COMPLAINT**

Plaintiff, TAVIA WAGNER (hereinafter the "Plaintiff"), through undersigned counsel, hereby files this Complaint and sues VIRGINIA-SACRAMENTO INVESTMENTS, LLC, a Limited Liability Company, and LA ABUNDANCIA BAKERY COLOMBIANA, INC., a Florida Corporation, (hereinafter, collectively the "Defendants"), for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees), pursuant to 42 U.S.C. §12181, et. seq., ("AMERICANS WITH DISABILITIES ACT" or "ADA") and alleges:

## JURISDICTION AND PARTIES

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA").  This Court is vested with jurisdiction under 28 U.S.C. §1331 and §343.

2.      Venue is proper in this Court, Middle District pursuant to 28 U.S.C. §1391(B) in that all events giving rise to this lawsuit occurred in Seminole County, Florida.

3.      At the time of Plaintiff's visit to Defendants' Subject Facilities, prior to instituting the instant action, TAVIA WAGNER (hereinafter referred to as "WAGNER"), was a resident of the State of Florida, suffered from what constitutes a "qualified disability" under the Americans with Disabilities Act of 1990, and used a wheelchair for mobility.  Plaintiff has Spina Bifida.  Since childhood, she has been required to traverse in a wheelchair, and is substantially limited to performing one or more major life activities including, but not limited to, walking, standing, grabbing, grasping, and/or pinching.

4.      The Plaintiff personally visited, in or about December 2, 2024 Defendants' Subject Facilities, but was denied full and equal access to, and full and equal enjoyment of, the facilities services, goods, privileges and accommodations offered within Defendants' Subject Facilities, which is the subject of this lawsuit,

even though she would be classified as a "bona fide patron", because of her disabilities. Plaintiff lives in Volusia County, Florida, in close proximity to Defendants, (within 38.7 miles) and travels in the surrounding areas near Defendants' Subject Facilities on a regular basis.

5. The Defendants, VIRGINIA-SACRAMENTO INVESTMENTS, LLC, a Limited Liability Company, and LA ABUNDANCIA BAKERY COLOMBIANA, INC., a Florida Corporation, are authorized to conduct, and are conducting business within the State of Florida.

6. Upon information and belief, LA ABUNDANCIA BAKERY COLOMBIANA, INC., is the lessee and/or operator of the real property (the "Subject Facility"), and the owner of the improvements where the Subject Facility is located which is the subject of this action, the establishment commonly referred to as LA ABUNDANCIA BAKERY, located at 1555 State Road 436, Suite #1001, Casselberry, Florida.

7. Upon information and belief, VIRGINIA-SACRAMENTO INVESTMENTS, LLC, is the lessor, operator and/or owner of the real property (the "Subject Facility"), and the owner of the improvements where the Subject Facilities are located which are the subjects of this action.

8.     All events giving rise to this lawsuit occurred in the State of Florida. Venue is proper in this Court as the premises are located in Seminole County in the Middle District, Orlando Division.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

9.     On or about July 26, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et. seq.  Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.  The effective date of the Title III of the ADA was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(a).

10.    Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

(iii)   discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

(iv)    individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices.  Exclusionary qualification

standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

11.    Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(ii)    provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

(iii)   invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2), and (4).

12.    Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, Defendants are places of public accommodation in that they are establishments which provide goods and services to the public.

13.    Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, the building and/or Subject Facility which is the subject of this action is a public accommodation covered by the ADA and which must be in compliance therewith.

14.    The Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations and/or undergone remodeling, repairs and/or alterations since January 26, 1990.

5

15.    Defendants have discriminated, and continue to discriminate, against the Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of, goods, services, facilities, privileges, advantages and/or accommodations at Defendants' Subject Facilities in derogation of 42 U.S.C. §12101, et. seq., and as prohibited by 42 U.S.C. §12182 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. §12182(b)(2)(a)(iv), where such removal is readily achievable.

16.    The Plaintiff has been unable to, and continues to be unable to, enjoy full and equal safe access to, and the benefits of, all accommodations and services offered at Defendants' Subject Facilities.  Prior to the filing of this lawsuit, the Plaintiff visited the subject properties and was denied full and safe access to all the benefits, accommodations and services of the Defendants.  Prior to the filing of this lawsuit, Plaintiff visited Defendants VIRGINIA-SACRAMENTO INVESTMENTS, LLC, and LA ABUNDANCIA BAKERY COLOMBIANA, INC., with the intention of using Defendants' facilities but was denied full and safe access to the facilities, and therefore suffered an injury in fact.  As stated herein, the Plaintiff has visited the Subject Facilities in the past, prior to the filing of this lawsuit, resides near said Subject Facility, and Plaintiff intends to return to the Subject Facility and Property within six months, or sooner, upon the Subject Facility being made accessible.  As such, Plaintiff is likely to be subjected to continuing

discrimination at the Subject Facility unless it is made readily accessible to and usable by individuals with disabilities to the extent required under the ADA, including the removal of the architectural barrier which remain at the Subject Facility.

17.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

18.    The Defendants' Subject Facilities are in violation of 42 U.S.C. §12182 et. seq., the ADA and 28 C.F.R. §36.302 et. seq., and is discriminating against the Plaintiff, as a result of interalia, the following specific violations:

**<u>VIOLATIONS</u>**

a) Failure to provide ADA compliant parking stall striping and markings, at several stalls throughout the subject property, in violation 2023 FAC and 2010 ADAS Section 502.3.3.

b) Failure to provide ADA compliant parking stall width clearance, at several stalls throughout the subject property, in violation 2023 FAC Section 502.1.

c) Failure to provide ADA compliant parking stall slope gradings, at several stalls throughout the subject property, in violation 2023 FAC Section 502.4.

d) Failure to provide ADA compliant access aisle striping and markings, at several parking stalls throughout the subject property, in violation 2023 FAC and 2010 ADAS Section 502.3.3.

e) Failure to provide ADA compliant access aisle width clearance, at several parking stalls throughout the subject property, in violation 2023 FAC and 2010 ADAS Section 502.3.1.

f) Failure to provide ADA compliant access aisle slope grading, at several parking stalls throughout the subject property, in violation 2023 FAC Section 502.4.

g) Failure to provide ADA compliant access aisle, due in part to existing noncompliant built-up curb ramp within existing area, in violation 2023 FAC Section 502.4.

h) Failure to provide ADA compliant parking stall signage, in violation 2023 FAC Section 502.6.

i) Failure to provide ADA compliant parking stall signage with the $250 penalty, in violation 2023 FAC Section 502.6.1.

j)  Failure to provide ADA compliant curb ramp slope grading, at several curb ramps throughout the subject property, in violation 2023 FAC and 2010 ADAS Section 405.2.

k)  Failure to provide ADA compliant, unobstructed curb ramp top landing, in violation 2023 FAC and 2010 ADAS Section 406.4.

l)  Failure to provide ADA compliant number of exterior table seating, in violation 2023 FAC and 2010 ADAS Section 227.3.

m) Failure to provide ADA compliant exterior table clearances, in violation 2023 FAC and 2010 ADAS Section 306.1.

n)  Failure to provide ADA compliant entrance door hardware, in violation 2023 FAC and 2010 ADAS Section 309.4.

o)  Failure to provide ADA compliant entrance door mat, in violation 2023 FAC and 2010 ADAS Section 302.2.

p)  Failure to provide ADA compliant transaction counter height, in violation 2023 FAC and 2010 ADAS Section 904.4.1 and 904.4.2.

q)  Failure to provide ADA compliant clear floor space throughout the subject facility, in violation 2023 FAC and 2010 ADAS Section 403.5.1.

r)  Failure to provide ADA compliant interior table clearances, in violation 2023 FAC, 2014 FAC and 2010 ADAS Section 306.1.

s) Failure to provide ADA compliant interior aisle width clearances, in violation 2023 FAC and 2010 ADAS Section 403.5.1.

t) Failure to provide ADA compliant interior aisle width clearances, in violation 2023 FAC and 2010 ADAS Section 403.5.1.

u) Failure to provide ADA compliant directional signage to accessible restroom, in violation 2023 FAC and 2010 ADAS Section 216.8.

v) Failure to provide ADA compliant exterior restroom front door approach pull clearance, in violation 2023 FAC and 2010 ADAS Section 404.2.4.1.

w) Failure to provide ADA compliant restroom signage, in violation 2023 FAC and 2010 ADAS Section 216.8.

x) Failure to provide ADA compliant restroom door hardware, in violation 2023 FAC and 2010 ADAS Section 309.4.

y) Failure to provide ADA compliant lavatory clear floor space, in violation 2023 FAC and 2010 ADAS Section 606.2.

z) Failure to provide ADA compliant lavatory underside clearance, in violation 2023 FAC and 2010 ADAS Section 306.3.1.

aa) Failure to provide ADA compliant insulated pipes, in violation 2023 FAC and 2010 ADAS Section 606.5.

bb)    Failure to provide ADA compliant mirror, in violation 2023 FAC and 2010 ADAS Section 603.3.

10

cc) Failure to provide ADA compliant paper towel dispenser, in violation 2023 FAC and 2010 ADAS Section 308.2.1.

dd)    Failure to provide ADA compliant, unobstructed, toilet clear floor space, in violation 2023 FAC and 2010 ADAS Section 604.3.2.

ee) Failure to provide ADA compliant rear grab bar, in violation 2023 FAC and 2010 ADAS Section 609.4.

ff) Failure to provide ADA compliant side grab bar, in violation 2023 FAC and 2010 ADAS Section 609.4.

gg)    Failure to provide ADA compliant toilet paper dispenser location, in violation 2023 FAC and 2010 ADAS Section 604.7.

hh)    Failure to provide ADA compliant unobstructed, restroom maneuverability clearances, in violation 2023 FAC and 2010 ADAS Section 604.3.1.

19.    Upon information and belief, there are other current violations of the ADA at Defendants' Properties, and only once a full inspection is done can all said violations be identified.

20.    To date, the readily achievable barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA. The barriers to access at the Subject Facilities, as described above, have severely diminished Plaintiff's ability to avail

herself of the goods and services offered at the Subject Facilities, and compromise her safety.

21.    Pursuant to the ADA, 42 U.S.C. §12101 et. seq., and 28 C.F.R. §36.304, the Defendants were required to make the Subject Facility, a place of public accommodation, accessible to persons with disabilities since January 28, 1992.  To date, the Defendants have failed to comply with this mandate.

22.    The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  The Plaintiff is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C. §12205.

23.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant the Plaintiff's injunctive relief; including an order to alter the subject facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA and closing the subject facility until the requisite modifications are completed.

WHEREFORE, the Plaintiff hereby demands judgment against the Defendants and the Court declare that the subject property and Subject Facilities owned, operated, leased, controlled and/or administered by the Defendants are violative of the ADA;

A.  The Court enter an Order requiring the Defendants to alter their facilities and amenities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

B.  The Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendants to undertake and complete corrective procedures to the Subject Facility;

C.  The Court award reasonable attorney's fees, all costs (including, but not limited to court costs and expert fees) and other expenses of suit, to the Plaintiff; and

D.  The Court award such other and further relief as it deems necessary, just and proper.

Dated: This 31st day of January 2025.

Respectfully submitted,


By: /s/Anthony T. Litsch III
Anthony T. Litsch III
1368 Turnbull Bay Road, Suite 303
New Smyrna Beach, Florida 32168
Telephone: 386-409-7252
Email: bb_litsch4@att.net
Email: AnthonyTLitschiii@gmail.com
Florida Bar Number: 0084437
Attorney for Plaintiff

13